CURTIS LAMB v. MARY A. SCULLEN, HARRY ROBBINS, AND.
BURTON ROBBINS.

*Mortgage—Conditioned for successful prosecution and termination of pending suit—Failure to so prosecute will prevent recovery by mortgagee.*

On a review of the testimony in this case, the Court held that the payment of the money secured by the mortgage sought to be foreclosed by complainant was conditioned upon the *successful* prosecution and termination of the suit then pending in favor of the mortgagor, pursuant to complainant's agreement, and that his failure to *so* prosecute prevents a recovery.

Appeal from Cass. (Smith, J.)   Argued April 9, 1886. Decided May 6, 1886.

Bill filed to foreclose a mortgage.   Defendant Burton Robbins appeals.   Reversed and bill dismissed.   The facts are stated in the opinion.

*O. W. Coolidge*, for complainant.

*James A. Kellogg*, for defendant Burton Robbins.

[Counsel discuss the legal questions involved in the record, citing numerous authorities, but as the Court decide the case on a question of fact, abstracts of briefs are omitted.— REPORTER.]

MORSE, J.   The bill of complaint in this case was filed to foreclose a mortgage executed by the defendant Mary A. Scullen to complainant upon 40 acres of land situate in the county of Cass.

The undisputed facts show that the land was purchased by Harry J. Robbins, the father of Mrs. Scullen, who, at the the time, to please his wife, had the deed of the premises executed to her, Rebecca Robbins.   The deed was made March 7, 1843.   At this time there were two or three acres improved, and a log house upon the land.   Robbins moved

upon it, and cleared and cultivated it for many years. His wife died March 7, 1866, leaving four children. February 1, 1869, these heirs voluntarily quitclaimed their interest in the premises to their father, believing that it was right for them to do so. Mary A. Scullen, then Almira Robbins, joined with the others in this conveyance, but she was a minor about 18 years of age.

After her marriage, and on the fourteenth day of August, 1877, the defendant Mary A. Scullen filed a bill in the circuit court for the county of Cass, in chancery, averring that she executed said deed upon the solicitation of her father, while under age, and with the promise upon his part that he would sell the premises and account to her for her share therein, receiving no consideration for the same; that she had never adopted or confirmed said deed since her majority; and now disavowed and repudiated it, and praying that her said conveyance be set aside and decreed invalid, and also asking an accounting of rents and profits. This suit was defended by the father.

The complainant alleges and shows, by his own oath, that while this suit was in progress Mrs. Scullen and her husband came to his house, in 1878, at Bertrand, in Berrien county, and wanted to hire some money to help them through with the suit; that they stated to him that they were poor, and could not go on with the proceedings unless he would help them, as their attorneys had refused to proceed further without the payment of some money. He was loth to aid them at first, but they appealed to him so strongly that he finally consented. They also desired him to assist them in managing the case. Mrs. Scullen said to him :

" We are willing to pay you for the time you spend. We don't want you to work for nothing. We are willing to pay you interest on your money, and for your time you spend, or we will give you the same that sister Melvina did, fifty dollars for your services to go on and manage the suit that is now in court, that we have started."

Complainant then consented to go ahead and do the best he could for $50. The Scullens told him to keep correct

account of all he paid out, and he should have it all back, with interest. He then, about this time, let them have $9 in wheat, wood, and groceries, and $16 in money, taking a note for $25, and the mortgage in question here to secure said note and also the money and services to be thereafter paid out and expended in Mrs. Scullen's behalf in and about said suit.

The mortgage was for and in consideration of $250, and covered one-fifth of the land heretofore mentioned,—it being her share, as she claimed, as heir-at-law of her mother,—and by its terms secured the sum of $50 for complainant's services to be rendered in said suit, all moneys that he might expend therein to pay costs and attorneys' fees in the prosecution thereof, and the note of $25, with interest at 10 per cent.

He shows further by his own oath that he paid out in behalf of Mrs. Scullen, under this agreement, $25 to Howell & Carr, attorneys at Cassopolis, March 4, 1878, and some $13 in all for expenses.

He contended, on the hearing, for a decree for these amounts, with interest, and also for the $50, with interest, for his services, and the amount of the note, and interest thereon.

The decree of the court below seems to have allowed him, as near as can be ascertained from the record, the money paid to Howell & Carr, and the expenses, the note and interest, and $15 for his services, with interest.

The decree is resisted upon four grounds:

1. That the agreement relied upon is void for champerty and maintenance.

2. That there never was any legal disaffirmance by Mrs. Scullen of her deed executed in her minority, and that January 5, 1880, she ratified and confirmed such conveyance by her deed again to her father, which deed is undisputed.

3. That before she executed the mortgage to complainant she had made and signed an unconditional stipulation to dismiss her suit.

4. That complainant's agreement with her as to the payment for all the moneys and services to be advanced by him in the suit, including said note, was conditional upon their

success in such suit in setting aside her deed executed while under age; that if said suit was not successful, the complainant was to receive nothing.

In our view of the case it will not be necessary to consider any objection other than the last.

The evidence in the record is not satisfactory in a great many respects. The note and mortgage presumptively show an indebtedness to the amount of the note, and the interest thereon, and also corroborate the statement of the complainant that an agreement was made between him and Mrs. Scullen to pay him for services and advances. This agreement is corroborated also, in part, by the testimony of Morgan R. Scullen, the husband of Mary A. Scullen, but he positively denies the statement of complainant that any money or anything else was furnished by complainant to him and his wife, and denies all knowledge of said note, or any money being paid to or for the wife.

He further swears that, after the execution of the mortgage in suit, he borrowed some money for his own use, in buying a printing-press, securing such loan by two notes, one for $25 and one for $100, and a mortgage upon his wife's supposed interest in this same land, which notes and mortgage were afterwards paid by him in full to David E. Hinman, then acting as attorney for complainant, at Buchanan, in February, 1879. He further testifies that the payment to complainant, under the agreement evidenced by the first mortgage, was contingent upon the successful prosecution and termination of his wife's suit to recover her interest in the premises; and that he and his wife, residing out of the State, wrote letters to Lamb, requesting him to proceed with the suit, to which no answer was received, and that Lamb virtually abandoned the suit, thus forfeiting the agreement.

Lamb admits the giving and the payment of the second mortgage, as testified to by Scullen.

Neither Mrs. Scullen nor Howell & Carr, or either of them, are sworn in the cause, and the case rests upon the evidence of Lamb and Scullen as to the agreement, and the expenditures under it.

The only evidence we have of the progress of the suit, after this agreement was made, is the testimony of O. W. Coolidge, who says that he drew up the stipulation of discontinuance before the agreement, as follows, the cause being entitled properly:

"It is hereby agreed that said cause be discontinued, without costs to either party.

"MARY ALICE SCULLEN, Complainant.

"HARRY ROBBINS.

"By O. W. COOLIDGE, Solicitor for Defendant.

"*Dated September* 12, 1877."

—That the suit was not formally discontinued, the stipulation not being filed in the cause; and that subsequently it was revived, and some testimony taken.

Nothing further appears until the deed of January 5, 1880, which would in effect discontinue Mrs. Scullen's suit.[1] How much evidence was taken, and when, does not appear.

Complainant, by his own showing, spent only about three days in and about the suit, estimating the value of his time at $2.50 or $3.00 per day. We are satisfied from his own testimony that the agreement under which he seeks to recover, and to which his mortgage was a collateral security, was, in the contemplation of both parties, conditional upon the successful ending of Mrs. Scullen's suit. She had no property except this interest in the premises in litigation. He could not hope for repayment of the moneys advanced, or compensation for services rendered, unless she avoided her deed to her father. On cross-examination he testified:

*Q.* Would you have taken Mrs. Scullen's note without security?

*A.* No, sir; I don't think I would.

*Q.* Was there anything about a failure in this suit? If so, state what.

*A.* No, sir; there was never anything said about a failure, —not between Scullen and me. If I had thought there was any chance for a failure, I would not have loaned them money.

---

[1] On January 5, 1880, Mary A. Scullen executed and delivered a quitclaim deed of the land in dispute to her father, Harry J. Robbins.

*Q.* You looked to the land for your pay in the matter, did you ?

*A.* Why, I expected, if I could not get my pay from Mr. and Mrs. Scullen, that the land was good for the pay ; yes, sir."

It is evident that he relied upon his security upon the land, which was worthless unless they succeeded in setting the deed aside.

He admits that Mr. Scullen was present when the agreement was made ; and, taking the testimony of the two together, we are constrained to hold the agreement to have been conditioned as testified to by Scullen.

The decree of the court below will be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

The other Justices concurred.